UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-22319-RAR

**WILLIE MAE JACKSON**,

      Plaintiff,

v.

**ALTO EXPERIENCE, INC.**, *et al.*,

      Defendants.

_____/

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND TO STRIKE**

    **THIS CAUSE** comes before the Court upon Defendants Alto Experience, Inc. and Alto Operations Florida, LLC's ("Alto") Motion to Dismiss Amended Complaint and to Strike Claim for Damages Relating to Post-Termination Stroke ("MTD") filed on August 18, 2023, [ECF No. 19].[1] Having considered the MTD, the record, and being otherwise fully advised, it is hereby

    **ORDERED AND ADJUDGED** that the MTD, [ECF No. 19], is **DENIED** for the reasons stated herein.

**BACKGROUND**

    Plaintiff Willie Mae Jackson, who is hearing impaired, claims she was fired from Defendants' driving service because she wears a hearing aid and that her discriminatory firing caused significant emotional distress leading to a stroke requiring her hospitalization. *See* Am. Compl., [ECF No. 11], ¶¶ 1–44. Plaintiff is a 67-year-old female who "has worn a hearing aid in her left ear for as long as she can remember." *See* [ECF No. 23-1]; Am. Compl. ¶ 20. She also has over 20 years of experience as a passenger transportation driver, a clean driving record, and has worked for several different

---

[1] The Motion to Dismiss is fully briefed and ripe for adjudication. *See* Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss Am. Compl. ("Response"), [ECF No. 23]; Defs.' Reply to Resp. in Opp'n to Mot. to Dismiss Am. Compl. ("Reply"), [ECF No. 26].

driving companies.  Am. Compl. ¶¶ 21–22.  Defendants are a ridesharing service that is highly integrated with respect to ownership and operations such that they are functionally a single employer/integrated enterprise.  Am. Compl. ¶¶ 45–59.

On January 19, 2022, Plaintiff was hired as a full-time driver for Alto's rideshare service. Am. Compl. ¶ 23.  On January 28, 2022, she reported to a required in-car training for new hires. Am. Compl. ¶ 24.  Alto drivers rely upon an in-ear headset ("Alto Headset"), similar to wired headphones, which allows drivers to communicate with Alto dispatchers while driving.  Am. Compl. ¶¶ 26–27. During the required "ride-along," Alto supervisor and assistant general manager Abraham Oveisi ("Mr. Oveisi") noticed that Plaintiff was unable to utilize the Alto Headset—an in-ear headset used by Alto drivers—because of her hearing aid.  Am. Compl. ¶ 26.  As a result, Mr. Oveisi informed Plaintiff that Alto would not be able to keep her on as a driver if she could not wear the Alto Headset. Am. Compl. ¶ 28.  In response, Plaintiff explained that her hearing aid was Bluetooth capable and could be paired directly with the Alto Headset, just as she claims to have done in her previous jobs as a passenger transportation driver.  Am. Compl. ¶ 29.  Mr. Oveisi responded that he would speak to his manager about the headset issue, and in the meantime, he put the device on speakerphone to complete the ride-along.  Am. Compl. ¶¶ 30, 32.

After the ride-along, Plaintiff apparently received a positive review of her performance.  Am. Compl. ¶ 33.  But upon returning from a break later that day, Mr. Oveisi informed Plaintiff that she could no longer drive for Alto because she could not wear the Alto Headset.  Am. Compl. ¶ 33. Plaintiff further alleges that neither Mr. Oveisi nor Alto engaged in any additional investigation or inquiry to determine whether a reasonable accommodation was available before terminating Plaintiff. Am. Compl. ¶ 36.  After her termination, Plaintiff "returned to her car and broke down in tears because it was the first time she had been treated differently because of her hearing impairment and need to wear a hearing aid," and "cried her entire way home."  Am. Compl. ¶¶ 38–39.

Shortly after her on-site termination, Plaintiff received an email from Alto stating, "[a]s discussed with our managers, we've decided at this time to not proceed with your training," and advising her to "look for official documentation from our HR team within 72 hours."  Am. Compl. ¶ 40.  Plaintiff claims that she has yet to receive any official termination documentation from Alto. Am. Compl. ¶ 41.  In the week following her termination, Plaintiff alleges that she was "so emotionally depressed that she could not sleep," and that she felt "useless, discouraged, and sad because of her disability," which she had "never experienced before."  Am. Compl. ¶ 42.  Six days later, on February 3, 2022, Plaintiff suffered a stroke and was admitted to the hospital.  Am. Compl. ¶ 43.  Plaintiff also alleges that "[p]rior to suffering from her stroke, [she] made efforts to pursue legal claims," Am. Compl. ¶ 44, but the Amended Complaint is silent as to what specific actions she took prior to the stroke.

On February 28, 2022, after her stroke, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC Charge"), [ECF No. 23-1].  Am. Compl. ¶ 11. The EEOC Charge contains a condensed summary of the allegations described above.  EEOC Charge at 1.  Notably, next to the "Applicable Law" section, the Charge states "I believe Alto failed to accommodate my hearing disability and discriminated against me as a person with a hearing disability, in violation of the Americans With Disabilities Act Amendments Act [sic]."  *Id.*  Also of note, there is a box at the bottom left of the form with an "X" underneath and adjacent to the text that reads: "I want this charge filed with both the EEOC and the FCHR.  I agree to cooperate fully with the Agency(ies) and my counsel in their investigation of my claims and will promptly notify them of any change in my contact information."  *Id.*  Accordingly, Plaintiff alleges that her EEOC Charge was properly dual filed with the Florida Commission on Human Relations ("FCHR") pursuant to the Florida Civil Rights Act ("FCRA") on the same day it was filed with the EEOC.  Am. Compl. ¶ 11. Finally, Plaintiff claims she also filed a Miami-Dade Commission on Human Rights Charge of

Discrimination, Am. Compl. ¶ 11, setting forth identical allegations, which Plaintiff also attaches to her Response ("MDCHR Charge"), [ECF No 23-2].

Plaintiff states that on April 12, 2023, the Miami-Dade Commission on Human Rights issued a Notice of Right to Sue Letter pursuant to the Miami-Dade Human Rights Ordinance ("MDHRO"), and that on August 1, 2023, the EEOC issued a Notice of Right to Sue. Am. Compl. ¶¶ 13–14. Finally, Plaintiff alleges that more than 180 days have passed without a determination by the FCHR on whether reasonable cause for her claim existed under the FCRA. Am. Compl. ¶ 12. On May 11, 2023, Plaintiff filed suit in Florida's Eleventh Judicial Circuit, [ECF No. 1-3], and on June 22, 2023, Defendants removed the action to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See generally* [ECF No. 1]. On August 4, 2023, Plaintiff filed an Amended Complaint, [ECF No. 11].

Plaintiff's six-count Amended Complaint alleges that Defendants unlawfully discriminated against her on the basis of her hearing disability and failed to provide her with a reasonable accommodation under the Americans with Disabilities Act ("ADA"), the FCRA, and the MDHRO. *See generally* Am. Compl. In opposition, the MTD advances three main arguments: (i) Plaintiff's claim for damages related to her stroke should be stricken as incognizable under the ADA, FCRA, and MDHRO, or in the alternative, the Florida Workers Compensation Act ("FWCA") precludes her claim for stroke damages; (ii) Plaintiff's FCRA claims (Counts Two and Five) and MDHRO claims (Counts Three and Six) should be dismissed because Plaintiff failed to exhaust her administrative remedies prior to filing suit; and (iii) Plaintiff's failure-to-accommodate claims under the ADA, FCRA, and MDHRO (Counts Four–Six) should be dismissed because Plaintiff failed to actually request a reasonable accommodation. *See generally* MTD.

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Bell Atl. Corp.*, 550 U.S. at 556).  "[T]he standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp.*, 550 U.S. at 556).  "[W]hen plaintiffs 'have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.'" *Id*. (quoting *Bell Atl. Corp.*, 550 U.S. at 570).  Further, when evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all inferences in favor of the plaintiff. *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017).  And the "court must limit its consideration to the pleadings and exhibits attached to the pleadings. . . ." *Gubanova v. Miami Beach Owner, LLC*, No. 12-22319, 2013 WL 6229142, at *1 (S.D. Fla. Dec. 2, 2013) (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012)).

Rule 12(f) of the Federal Rules of Civil Procedure permits the Court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored and denied 'unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" *Bank of Am., N.A. v. GREC Homes IX, LLC*, No. 13-21718, 2014 WL 351962, at *4 (S.D. Fla. 2014) (quoting *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC.,* No. 09-61490, 2010 WL 5393265, at *1 (S.D. Fla. Dec. 21, 2010)).  "The purpose of a motion to strike is 'to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" *Hutchings v. Federal*

*Ins. Co.*, No. 6:08-cv-305-Orl-19KRS, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008) (quoting

*McInerney v. Moyer Lumber & Hardware, Inc.,* 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)).   They

should only be granted when it is required for the purposes of justice. *Badesch v. Aetna Health, Inc.*,

No. 07-80991, 2008 WL 2856599, at *1 (S.D. Fla. July 23, 2008).   Finally, courts possess the

authority to strike a plaintiff's request for unrecoverable damages at the motion-to-dismiss stage. *See*

*Murphy v. Carnival Corp.*, 426 F. Supp. 3d 1288, 1290–91 (S.D. Fla. Nov. 8, 2019).

## ANALYSIS

### I.  Defendants' Motion to Strike Plaintiff's Claim for Stroke Damages

Defendants posit that Plaintiff's request for damages related to her stroke should either be

stricken or dismissed as incognizable under the FCRA and ADA.[2]   MTD at 5–13.   As a preliminary

matter, the stated purpose of the ADA is to eliminate discrimination against individuals with

disabilities.  42 U.S.C. § 12101(b)(1).   Accordingly, the Act establishes that no covered entity "shall

discriminate against a qualified individual on the basis of disability in regard to job application

procedures, the hiring, advancement, or discharge of employees, employee compensation, job

training, and other terms, conditions, and privileges of employment."   42 U.S.C. § 12112(a).   A person

is disabled within the meaning of the ADA if he or she has "a physical or mental impairment that

substantially limits one or more [of his or her] major life activities," or if he or she is "regarded as

having such an impairment."   42 U.S.C. § 12102(1).   Major life activities include, but are not limited

to, "caring for oneself, performing manual tasks, seeing, *hearing* . . . and working."   42 U.S.C. §

12102(2)(A) (emphasis added).   "Th[is] definition of disability [is to be] construed in favor of broad

coverage . . . ."  42 U.S.C. § 12102(4)(A).

---

[2]  As the MTD correctly notes, the Eleventh Circuit has held that claims under the FCRA based on disability
discrimination are analyzed using the same legal framework as ADA claims.  *See Holly v. Clairson Indus.,
LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007) (evaluating FCRA and ADA claims relying upon the same
analysis).

To that end, the ADA imports the remedies available under Title VII, which include injunctive and other equitable relief, accrual of back pay and, through the enactment of the Civil Rights Act of 1991, compensatory damages as well as punitive damages in the event the employer acts with malice or with reckless indifference to a plaintiff's federally protected rights.  *See Anderson v. Embarq/Sprint*, 379 F. App'x 924, 926 (11th Cir. 2010) (citing 42 U.S.C. § 12117(a) and applying remedies and procedures of Title VII to causes of action brought under the ADA); *see also* 42 U.S.C. § 1981a(a)–(b) (establishing the remedies available in the event of unlawful employment discrimination based upon disability).  Relevant here, the ADA, through the remedies available under Title VII, allows disabled individuals who are discriminated against to recover damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and . . . punitive damages" subject to certain limitations enumerated in the statute.  *See* 42 U.S.C. § 1981a(b)(3).

Similarly, the FCRA is Florida's employment discrimination law.  *See* Fla. Stat. §§ 760.01–760.11, 509.092.  Subject to certain statutorily enumerated limitations, the FCRA also allows courts to "award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages."  Fla. Stat. § 760.11(5).  Moreover, disability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims. *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007) (citing *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1224 n.2 (11th Cir. 2005)).  The MDHRO also allows broad recovery of "actual and punitive damages" due to unlawful employment discrimination.  Miami-Dade County, Fla., Code, ch. 11A, art. IV, § 11A–28(10).

The MTD advances a three-part argument for striking Plaintiff's stroke-related damages: (A) the stroke constitutes a personal injury and is therefore not cognizable under the ADA, FCRA, and MDHRO, MTD at 6–8; (B) the FWCA's exclusivity bar defeats Plaintiff's request for damages, MTD

at 11–13; and (C) Defendants' conduct was not the proximate cause of Plaintiff's stroke, MTD at 8–11.  For the reasons that follow, each of Defendants' arguments for striking or dismissing Plaintiff's stroke-related damages is unsuccessful.

### A. *Plaintiff's Stroke Is Not a Personal Injury as Pleaded*

Defendants argue that Plaintiff cannot recover damages related to her stroke because the stroke constitutes a personal injury claim incognizable under the ADA, FCRA, and MDHRO.  MTD at 6.  At the outset, Defendants cite several cases in support of the proposition that the "ADA's stated purpose and enumerated list of remedies has guided several federal courts to conclude that the ADA supplies no remedy for damages for personal injury."  *Id.* at 6–7   While Defendants correctly state that damages for personal injury are unrecoverable under the ADA and FCRA as a matter of law,[3] they misapply this proposition to the facts alleged here.  Plaintiff has adequately alleged that she was discriminatorily fired due to her hearing disability, and this discriminatory firing subsequently caused her stroke. Defendants, in contrast, improperly attempt to frame Plaintiff's stroke as a personal injury arising on the job.  Indeed, each of the cases Defendants cite in support of their misplaced personal injury argument underscores this critically dispositive distinction.

For example, Defendants place special emphasis on *McEwen v. UPMC Shadyside Presbyterian Hosp.*, No. 2:09-CV-1181, 2010 WL 4879195 (W.D. Pa. Nov. 23, 2010) and *Aponik v. Verizon Pennsylvania Inc.*, 106 F. Supp. 3d 619 (E.D. Pa. 2015).  According to Defendants' own description, "[i]n *McEwen*, plaintiff, a lab technician who lost a leg in a motorcycle accident, was assigned a lab position that required standing for extended periods after he submitted a request for an accommodation." MTD at 7 (citations omitted).  The plaintiff in *McEwen* subsequently sued his former employer under the ADA and Pennsylvania Human Relations Act, claiming that his transfer

---

[3]  Defendants fail to provide any authority for the proposition that personal injury claims are not recoverable under the MDHRO.  In any event, the Court need not address whether such remedies are available at this stage of the proceedings.

to the lab position injured his remaining leg and caused him to become totally disabled. *McEwen*, 2010 WL 4879195, at *7. In rejecting this argument, the court concluded that plaintiff's claim constituted a personal injury claim not cognizable under the ADA. *Id.* Similarly, in *Aponik*, "plaintiff sued his former employer for bodily injury damages he sustained while working and as a result of the denial of his accommodation request . . . The *Aponik* court held that the ADA did not permit recovery for physical injuries and struck plaintiff's claim for damages for personal injury in consequence of the former employer's alleged violation of the ADA." MTD at 8 (citation omitted).

Both *McEwen* and *Aponik* are plainly distinguishable from this case in several significant ways. First, both cases involved plaintiffs who were already working for a defendant-employer and who were experiencing some disability or preexisting injury while working for that employer. Importantly, during their employment, plaintiffs in both cases claimed their injuries/disabilities were exacerbated by their employers' alleged disability-discriminatory conduct and failures to accommodate those injuries/disabilities. It was these allegations of on-the-job injury/disability exacerbation that led the courts in *Aponik* and *McEwan* to conclude that both claims amounted to personal injury claims that were incognizable under the applicable statutes. Here, in contrast, Plaintiff has *not* claimed that her stroke was caused by some action or task that Defendants—her prospective employers—required of her or otherwise failed to accommodate during her provisional employment. Plaintiff instead alleges that Defendants' decision to fire her—because of her hearing disability—is what led to her severe psychological distress that ultimately triggered her stroke. This is critically different from the situations in both *Aponik* and *McEwan.*

Another key difference concerns the respective procedural postures and applicable standard of review. Both *Aponik* and *McEwan* were decided on summary judgment, with the full benefit of discovery. "[W]hen evaluating a Rule 12(b)(6) motion to dismiss," on the other hand, "the court must accept all well-pleaded factual allegations as true and draw all inferences in favor of the plaintiff."

*Smith*, 873 F.3d at 1351.  Accordingly, the Court must assume as true that Plaintiff's discriminatory firing resulted in psychological distress, which in turn caused her stroke.  And assuming this chain of events occurred as Plaintiff alleges, the applicable disability discrimination statutes clearly contemplate the recovery of damages arising from distress/emotional/psychological harms and other non-pecuniary losses resulting from a discriminatory firing.  Thus, Defendants' attempt to characterize Plaintiff's stroke as a personal injury fails.

## B.  The FWCA's Exclusivity Bar is Inapplicable

The above analysis applies with equal force to Defendants' FWCA exclusivity-bar argument. Defendants maintain that "[e]ven if Plaintiff could recover for personal injury damages (including any attendant emotional distress) suffered as a result of her stroke, any claim she would assert would be barred by the [Florida] Workers' Compensation Act."  MTD at 11.

The Court first notes that the ADA does not disturb the standards for workers' compensation benefit eligibility under state law.  42 U.S.C. § 12201(e).  The Florida Workers' Compensation statute defines "injury" as "personal injury or death by accident arising out of and in the course of employment."  Fla. Stat. § 440.02(19). The FWCA further explains that "'[a]rising out of' pertains to occupational causation.  An accidental injury or death arises out of employment if work performed in the course and scope of employment is the major contributing cause of the injury or death."  Fla. Stat. § 440.02(4).

In support of the argument that the FWCA exclusivity bar forecloses Plaintiff's claim for damages related to her stroke, Defendants cite two provisions of the FWCA: Fla. Stat. § 440.09, stating an employer shall pay an employee workers' compensation benefits "if the employee suffers an accidental injury arising out of work performed in the course and scope of employment," and Fla. Stat. § 440.11, stating that the FWCA "shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee . . . ."  Defendants also cite *Locke v.*

*SunTrust Bank*, 484 F.3d 1343 (11th Cir. 2007). In *Locke*, the Eleventh Circuit explained that "[t]he Florida courts have established a two-part, work-connectedness test for whether the exclusivity bar applies, which requires that a work-related injury must both (1) arise out of and (2) occur in the course of employment. To be compensable, an injury must arise out of employment in the sense of causation and be in the course of employment in the sense of continuity of time, space, and circumstances." 484 F.3d at 1347 (citations omitted).

Defendants go on to argue that "[p]laintiff was driving for and employed by Alto at the time she was subject to the alleged discrimination, which she alleges caused her to experience acute stress and suffer a stroke." MTD at 12. Defendants accordingly conclude that "[p]laintiff's claims therefore directly arise out of and occurred in the course of her employment with Alto because she alleges that her stroke was the result of Alto's alleged discrimination in connection with the drive along." *Id.* Defendants add "[t]hat Plaintiff's stroke occurred outside of work (and a week after her termination) does not negate the applicability of the workers' compensation exclusivity bar." *Id.*

But Defendants' exclusivity-bar argument suffers from the same fatal flaw as Defendants' personal injury argument—it relies upon a threshold determination that Plaintiff sustained on-the-job injuries. Because the Court has already rejected this argument, Plaintiff's FWCA exclusivity bar-argument also necessarily fails. As already explained, Defendants are incorrect that Plaintiff's claims "ar[o]se out of and occurred in the course of her employment with Alto." MTD at 12. Plaintiff has not alleged that her stroke occurred as a result of the ride along or some other work-related task that Alto or its agent-employees asked her to perform. Instead, Plaintiff alleges that her discriminatory firing led to severe emotional distress, which subsequently caused her stroke. Am. Compl. ¶¶ 42–43. Accordingly, the cases Defendants cite in support of their exclusivity-bar argument, MTD 12–13, are again inapposite. Each involves an injury that flowed from some work-related task an employer required an employee to perform or that was otherwise exacerbated by an employers' failure to

accommodate the plaintiff's existing disability. Each involved on-the-job or job-related injuries that state workers' compensation statutes are specifically designed to cover. But that is not the scenario here. Accordingly, the FWCA does not bar Plaintiff's damages claim related to her stroke.

### C. Defendants' Causation Argument is Premature

Defendants attempt to salvage their effort to strike Plaintiff's damages claim by attacking causation directly. They posit that even if the first two reasons to strike fail, Plaintiff has not adequately established proximate causation connecting the alleged discriminatory firing to the stroke, and for this reason, the damages claim related to the stroke must be stricken. MTD at 8–11. But this argument also fails.

It is "a well established principle of [the common] law, that in all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) (quoting *Waters v. Merchants' Louisville Ins. Co.*, 11 Pet. 213, 223 (1837)) (quotations omitted). "That venerable principle reflects the reality that 'the judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrongdoing.'" *Id.* (quoting *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 536 (1983)). Courts are thus to construe federal causes of action in a variety of contexts to incorporate a requirement of proximate causation. *See id.* "[T]he proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Id.* at 133

On this point, neither party cites a single ADA discriminatory firing case that supports their respective positions. Defendants lead with a pair of Florida Supreme Court cases stating general principles of proximate causation in the context of Florida common law negligence actions. MTD at 8–9 (citing *Chirillo v. Granicz,* 199 So. 3d 246 (Fla. 2016); *McCain v. Fla. Power Corp.,* 593 So. 2d 500 (Fla. 1992)). Relying upon these two decisions, Defendants argue "an injury caused by a freakish

and improbable chain of events would not be 'proximate' precisely because it is unquestionably unforeseeable.  The law does not impose liability for freak injuries that were utterly unpredictable in light of common human experience." MTD at 9 (quoting *McCain,* 593 So. 2d at 503).  Notably, however, both cases emphasize that disagreements as to whether the facts establish proximate cause are questions properly left for the jury, not the court.  *See Chirillo*, 199 So. 3d at 253; *McCain*, 593 So. 2d at 505.

Defendants next cite two federal cases in apparent support of their argument that the Court should find proximate cause as to the stroke lacking as a matter of law.  Defendants first cite *Est. of Roig v. United Parcel Serv., Inc.,* No. 20-60811, 2020 WL 6875790, at *10 (S.D. Fla. Sept. 30, 2020), *report and recommendation adopted*, No. 20-60811, 2020 WL 6873892 (S.D. Fla. Nov. 22, 2020) followed by *Reinard v. Harsco Corp.*, No. 05-CV-738S, 2006 WL 2795639, at *5–6 (W.D.N.Y. Sept. 26, 2006).  *Estate of Roig* is plainly inapposite.  There, the magistrate judge applied Florida's so-called "impact rule" in the context of a negligent infliction of emotional distress ("NIED") claim brought under Florida law.  *Est. of Roig,* 2020 WL 6875790, at *10.  The court ultimately concluded that the impact rule required dismissal of Plaintiff's NIED claim given the lack of any qualifying impact.  Here, on the other hand, Plaintiff is proceeding under the ADA and FCRA—federal and state statutory causes of action—both of which expressly allow for the recovery of emotional distress and other nonpecuniary damages even in the absence of an impact.  Accordingly, *Estate of Roig* is unavailing.

*Reinard*, though slightly more relevant, is still nonetheless inapposite.  In *Reinard*, the plaintiff, administrix of her deceased husband's estate, brought an action under the New York Human Rights Law,[4] alleging, in relevant part, that defendant's discriminatory firing of her late husband

---

[4] Similar to the ADA and FCRA, a cause of action based on a violation of the New York Human Rights law is subject to the same analysis as a claim brought under the Age Discrimination Employment Act ("ADEA"). *Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.,* 374 F.3d 66, 71 n.2 (2d Cir. 2004) (noting

based upon his age caused him to commit suicide—and defendant should accordingly be held liable for the damages flowing from the husband's untimely death. *Reinard*, 2006 WL 2795639, at *5. In rejecting plaintiff's theory of causation, the *Reinard* court determined it failed as a matter of law because "the causal nexus between the alleged discriminatory conduct and its consequences [wa]s impossibly tenuous and remote" and "an employer, even one which allegedly discriminates against its employee, cannot be held liable for catastrophic consequences that are not 'reasonably foreseeable.'" *Id.* (citing *Martinez v. Ketchum Adver. Co.*, 865 F. Supp. 166, 169 (S.D.N.Y. 1994)). In reaching this conclusion, the court reasoned "[e]ven assuming that Defendant discharged Mr. Reinard because of his age, as a matter of law, it cannot be said that Mr. Reinard's suicide was a reasonably foreseeable consequence of his discharge. Under the circumstances, this Court declines to endorse a theory of causation that "disregard[s] completely plaintiff's own intervening free will . . . exercised over matters far beyond the employment setting that was the arena for the alleged wrong." *Id.* (citing *Martinez*, 865 F. Supp. at 169).

The facts here are markedly different from those in *Reinard*. Setting aside the fundamentally philosophical inquiry into the *Reinhard* court's apparent metaphysical commitment to free will, Plaintiff's alleged stroke here was not a byproduct of choice. And the discriminatory firing of an elderly woman, which Plaintiff claims caused her intense distress culminating in a stroke, is not the kind of "impossibly tenuous and remote" causal theory appropriate for dismissal at this state of the litigation. Even if the Court were to rely upon Florida tort law principles to resolve this issue, "[i]n the absence of a 'freakish and improbable chain of events' leading to injury, 'the question of foreseeability as it relates to proximate causation generally must be left to the factfinder to resolve.'"

---

that, "[s]ince the New York Human Rights Law statute mirrors the requirements of the ADEA, violation of one necessarily implies violation of the other").

*Colon v. Twitter, Inc.*, 14 F.4th 1213, 1224 (11th Cir. 2021) (quoting *Ruiz v. Tenet Hialeah Healthsystem, Inc.*, 260 So. 3d 977, 982 (Fla. 2018)).

      Having determined that Defendants' argument fails to defeat Plaintiff's stroke damages claim as a matter of law at this stage, the Court nonetheless finds it advisable to clarify what Plaintiff *will* need to prove to recover damages for her stroke. Plaintiff seems to suggest that, assuming she can prove there was in fact a discriminatory firing, the eggshell plaintiff rule will necessarily require Defendants to compensate Plaintiff for any and all damages contemplated by the ADA and FCRA without any corresponding need to demonstrate that the firing *actually* caused her stroke. *See* Resp. at 9–10. But the question of whether the alleged discriminatory firing caused the stroke is fundamentally an issue of causality, an issue which Plaintiff will undeniably bear the burden of establishing in later stages of this litigation. *See*, *e.g.*, *Broadway v. State Farm Mut. Auto. Ins. Co.*, 364 F. Supp. 3d 1329, 1341 (M.D. Ala. 2019) (finding that, where defendant disputed causal link between defendants' actions and the exacerbation of Plaintiff's preexisting maladies, the eggshell plaintiff rule was inapplicable until the plaintiff first established that the accident *proximately caused* plaintiff's preexisting maladies to worsen).

      For now, the Amended Complaint sufficiently alleges a provable set of facts substantiating a reasonably plausible causal theory connecting Plaintiff's stroke to the alleged discriminatory firing. And while the Court remains skeptical that Plaintiff will be able to satisfactorily prove facts establishing a causal nexus connecting Plaintiff's alleged discriminatory firing to her stroke that occurred six days later, this determination is nonetheless inappropriate for the Court to resolve—as a matter of law—at the motion to dismiss stage of this litigation. *See, e.g.*, *Harding v. Cianbro Corp.*, 498 F. Supp. 2d 344, 363 (D. Me. 2007) (instructing jury that noneconomic damages could be awarded if plaintiff "proved by a preponderance of the evidence that he experienced [such damages] as a result of disability discrimination."); *Mathiason v. Aquinas Home Health Care, Inc.,* 187 F. Supp.

3d 1269, 1278–79 (D. Kan. 2016) (finding award of compensatory damages under the ADA appropriate where plaintiff credibly established that "she suffered humiliation, stress and depression"). Consequently, Defendants' proximate cause challenge fails. Plaintiff's stroke damages are properly pleaded and shall not be stricken.

## II.   Exhaustion of Administrative Remedies

Defendants next argue that Plaintiff's FCRA claims (Counts Two and Five) and MDHRO claims (Counts Three and Six) should be dismissed because Plaintiff failed to first exhaust her administrative remedies under both the FCRA and Miami Dade County Code before bringing this suit in federal court. MTD at 13–17. Like the ADA, both the FCRA and the MDHRO require a prospective plaintiff claiming employment discrimination to follow certain procedures before suing. *See* Fla. Stat. § 760.11; Miami–Dade County, Fla., Code, ch. 11A, art. IV, § 11A–28(10) (describing requisite procedures for claims of employment discrimination by private individuals). As explained below, in light of the Amended Complaint's allegations, and after taking judicial notice of the EEOC Charge, the MDCHR Charge (collectively "Charges"), and the MDCHR Right to Sue Letter, the Court finds that Plaintiff adequately exhausted her administrative remedies under both the FCRA and the MDCHR before bringing this suit. Accordingly, Defendants' exhaustion arguments fail.

### A.   *Judicial Notice of the Charges and the MDCHR Right to Sue Letter*

Before turning to the exhaustion analysis, the Court first defines the documentary scope of its inquiry. As a threshold matter, Plaintiff did not attach to her Amended Complaint, nor was she required to attach, the Discrimination Charge she claims she filed with the EEOC, FCHR, and MDCHR. *See* Am. Compl. ¶ 11. Plaintiff was also not required to attach the Right to Sue Letters she claims she received from the EEOC and MDCHR, respectively. *See* Am. Compl. ¶¶ 13–15. At this stage of the litigation, Plaintiff need only sufficiently allege that the requisite charges were filed

with the FCRA and the MDCHR and that she met all other applicable administrative prerequisites prior to filing this lawsuit.

With that said, "[t]he district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (citing Fed. R. Civ. P. 12(b)). Nonetheless, a district court "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Id.* at 1276 (citing *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002)). "In this context, 'undisputed' means that the authenticity of the document is not challenged." *Id.* (citing *Horsley*, 304 F.3d at 1134). The Eleventh Circuit has also made clear "that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*." *Id.* (citing *Harris v. Ivax Corp.,* 182 F.3d 799, 802 n.2 (11th Cir. 1999); *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir.1999)).

Defendants note in their MTD that "[c]ourts routinely consider the allegations in a Charge and Right to Sue letters at the motion to dismiss stage—even where, as here, the Charge is not attached to the pleadings—and have dismissed complaints *with prejudice* after the same documents missing here show that the claim is barred for failure to exhaust administrative remedies." MTD at 13–14 (emphasis in original) (citing *Hodge v. Miami Herald Co.*, No. 08-20633, 2008 WL 4180012, at *2 (S.D. Fla. Sept. 10, 2008); *Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, 803 F. App'x 295, 300–01 (11th Cir. 2020)). Defendants accordingly conclude "this Court may consider the Charge of Discrimination," MTD at 14, and attach Plaintiff's EEOC Charge to their own MTD as an Exhibit, [ECF No. 19-1]. In her Response, Plaintiff attaches the same EEOC Charge, [ECF No. 23-1], her

MDCHR Charge, [ECF No. 23-2], as well as the Right to Sue Letter she received from the MDCHR, [ECF No. 23-4].

Given that (1) Plaintiff alleges she met all administrative prerequisites of the FCRA and MDHRO prior to filing this suit, Am. Compl. ¶¶ 11–15; (2) the EEOC and MDCHR Charges are both matters of public record; (3) it is Defendants who have placed the sufficiency of the two Charges and the MDCHR Right to Sue Letter at issue as they relate to whether Plaintiff failed to exhaust her administrative remedies under the FCRA and MDHRO; and (4) the parties do not contest the authenticity of any of these documents, the Court finds it proper to take judicial notice of the EEOC Charge, the MDCHR Charge, and the MDCHR Right to Sue Letter without converting this motion to dismiss into a motion for summary judgment. *See Hodge*, 2008 WL 4180012, at *2 (taking judicial notice of an EEOC right to sue letter on grounds that "[a]lthough the EEOC letter was not attached by the Plaintiff to his Complaint, EEOC actions are matters of public record, and Plaintiff [] does not dispute its authenticity."); *Mann v. Green,* No. CV407-140, 2008 WL 1766779, *1 n.2 (S.D. Ga. Apr. 17, 2008) (finding that, because plaintiff's EEOC actions were matters of public record, the court could take judicial notice of the EEOC documents without converting the motion to dismiss into a motion for summary judgment); *Sequera v. Hunter Douglas Fabrication Co.,* 184 F. Supp. 2d 1227, 1229 n.2 (M.D. Fla. 2002) (taking judicial notice of the EEOC 1994 work sharing agreement). The Court now turns to the exhaustion analysis.

### B. *Plaintiff Exhausted Her Administrative Remedies Under the FCRA*

Section 760.11 of the Florida Statutes establishes administrative and civil remedies for violations of the FCRA. Fla. Stat. § 760.11. Specifically, section 760.11(1) provides that "[a]ny person aggrieved by a violation of ss. 760.01–760.10 may file a complaint with the [FCHR] within 365 days of the alleged violation . . . ." Fla. Stat. § 760.11(1). As an alternative to filing a charge of discrimination directly with the FCHR, the statute also authorizes the filing of "a complaint under

this section . . . with the federal [EEOC] or with any unit of government of the state which is a fair-employment-practice agency. . . .” *Id*. As to the complaint itself, the same statutory provision mandates that “[a] complaint shall contain a short and plain statement of the facts describing the violation and the relief sought.” *Id*. “In the event that the [FCHR] determines that there is reasonable cause to believe that a discriminatory practice has occurred in violation of the Florida Civil Rights Act of 1992, the aggrieved person may either: (a) [b]ring a civil action against the person named in the complaint in any court of competent jurisdiction; or (b) [r]equest an administrative hearing under ss. 120.569 and 120.57.” Fla. Stat. § 760.11(4).

Before filing an FCRA action however, a plaintiff must first exhaust administrative remedies by filing a charge with the appropriate agency. *Jones v. Bank of Am.*, 985 F. Supp. 2d 1320, 1325 (M.D. Fla. 2013) (citing *Bridges v. Standard Pac. of Tampa GP, Inc.*, No. 8:06-cv-1937-T-23-TGW, 2007 WL 177688, at *1 (M.D. Fla. Jan. 19, 2007); Fla. Stat. § 760.11). “[A]n employee must file a complaint with the Florida Commission on Human Relations or the EEOC within 365 days of the alleged FCRA violation.” *Rainey v. United Parcel Serv., Inc*, 816 F. App’x 397, 401 (11th Cir. 2020) (citing Fla. Stat. § 760.11(1), (4), (8); *Woodham v. Blue Cross & Blue Shield of Fla. Inc.*, 829 So. 2d 891, 894 (Fla. 2002)). The complaint “must set forth ‘a short and plain statement of the facts describing the violation and the relief sought.’” *Id.* (quoting Fla. Stat. § 760.11(1)). If the FCHR determines that “no reasonable cause exists to believe that unlawful discrimination occurred, the claimant may request an administrative hearing before an [Administrative Law Judge].” *McCollough v. Nesco Res. LLC*, 760 F. App’x 642, 646 (11th Cir. 2019) (quoting Fla. Stat. § 760.11(7)). Once the ALJ has issued an order, “the claimant may not file a civil action unless the Commission, in its final order, determines that the FCRA has been violated.” *See id.* If the ALJ’s final order determines the FCRA was not violated, the claimant has 30 days to seek judicial review. *Id.* (citing Fla Stat. § 120.68(2)(a)).

The Eleventh Circuit has been "extremely reluctant to allow procedural technicalities to bar claims brought under [discrimination statutes]." *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018) (quoting *Gregory v. Ga. Dept. of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)). "To that end, [the Eleventh Circuit has] noted that the scope of an EEOC complaint should not be strictly interpreted." *Id.* (quoting *Gregory*, 355 F.3d at 1280). In *Gregory*, for example, the Eleventh Circuit "held that although the plaintiff had not checked the retaliation box on the document she filed with the EEOC, 'the exhaustion requirement was nonetheless satisfied' because the EEOC's 'investigation . . . would have reasonably uncovered any evidence of retaliation.'" *Id.* at 1327–1328 (quoting *Gregory*, 355 F.3d at 1278). "To determine whether a plaintiff has exhausted her administrative remedies, then, the 'proper inquiry' is whether the '[plaintiff's] complaint [is] like or related to, or grew out of, the allegations contained in [the] EEOC charge.'" *Id.* at 1328 (quoting *Gregory*, 355 F.3d at 1280).

With these principles in mind, the Court now turns to the EEOC Charge at issue here. As part of their failure-to-exhaust theory, Defendants first maintain that Plaintiff's FCRA claims should be dismissed because she failed to exhaust her administrative remedies under the FCRA—as Fla. Stat. section 760.11 requires—before filing this lawsuit. MTD at 13–16. Specifically, Defendants take issue with the fact that Plaintiff's EEOC Charge cites only the Americans with Disabilities Act in the section of the Charge titled "Applicable Law." MTD at 16. Accordingly, Defendants argue that the charge is facially insufficient based upon the FCRA's text and the case law interpreting it. MTD at 13–17. Because Plaintiff did not properly dual file her EEOC charge with the FCHR, Defendants maintain she failed to exhaust her administrative remedies under the FCRA, and dismissal is therefore required. MTD at 14–16.

Plaintiff responds that her EEOC Charge was properly dual filed with the EEOC and the FCHR pursuant to the agencies' Workshare Agreement. Resp. at 12–15. Specifically, Plaintiff points

to (1) the FEPA box she checked at the top of the form; (2) the box she checked at the bottom of the form indicating that she "want[ed] this charge filed with both the EEOC and FCRA"; (3) the subheading on the EEOC Charge reading "U.S. Equal Opportunity Commission [and the Florida Commission on Human Relations]"; (4) and the detailed factual allegations on the form itself, which Plaintiff argues are identical and overlapping with the facts required to sustain claims under the ADA, FCRA, and MDHRO. *Id.*

The parties have filed substantial supplemental authorities and corresponding responses concerning this aspect of the dispute, *see* [ECF Nos. 27, 28, 35, 36, 39]. This is understandable given that the case law on this subject has developed substantially during since the MTD was filed. In fact, a certified conflict has since emerged between Florida's Second and Fourth District Courts of Appeal on this exact issue during the pendency of the MTD. *See Ramos v. Steak N Shake, Inc.*, --- So. 3d ---, 2023 WL 8791666, at *3–4 (Fla. 2d DCA Dec. 20, 2023) (noting certified conflict between the Second and Fourth DCAs); *Almond v. Wells Fargo Bank, N.A.*, No. 23-23671, ECF No. 21, at 6 (S.D. Fla. Jan. 24, 2024) (same); *Narvaez v. Fla. Health Scis. Ctr.*, No. 8:23-CV-2195-TPB-NHA, 2024 WL 167260, at *4 (M.D. Fla. Jan. 16, 2024) (same).

The Fourth DCA's position is articulated in *Belony v. N. Broward Hosp. Dist.*, 374 So. 3d 5, 7 (Fla. 4th DCA 2023). In *Belony,* the Fourth DCA held "[o]ur plain reading of section 760.11, Florida Statutes (2019), compels us to conclude that the statutory prerequisite to bringing a civil lawsuit for an FCRA violation is premised on the claimant asserting a violation in a form sufficient to put the employer on notice that the claimant is alleging a violation of Florida law." *Belony*, 374 So. 3d at 7 (citing *White v. City of Pompano Beach*, 813 So. 2d 1003, 1007 (Fla. 4th DCA 2002)). The *Belony* court further cabined its holding by noting it "should not be interpreted to mean that a discrimination charge must specifically reference Florida law. Rather, our holding is intended to clarify that when a discrimination charge only and specifically alleges a violation of federal law, the

act of dually filing the charge with the FCHR is insufficient to comply with the requirements of section 760.11, Florida Statutes (2019)." *Id.* at 8.  Defendants also point out that, prior to *Belony*, the Third DCA had affirmed—without a written opinion—a circuit court opinion relying upon a similar rationale.  *See Casadesus v. Univ. of Miami,* 160 So. 3d 436 (Fla. 3d DCA 2015).

Not long after *Belony* however, the Second DCA, examining nearly identical facts and interpreting the same statutory text, reached the opposite conclusion.  In *Ramos*, the Second DCA held the following:

> If the legislature intended for the statutory language in section 760.11 to require that the aggrieved party specifically allege in the complaint that his or her claims were under the FCRA, it could have said so, but it did not. And in finding that Ramos failed to exhaust his administrative remedies by failing to specifically allege in his charge of discrimination that his claims were under the FCRA, the trial court added a requirement that is not found anywhere within the statute and contravenes the legislature's clear intent that the statute be interpreted liberally. We conclude that Ramos was not required to specifically allege in his charge of discrimination that his claims were under the FCRA and that the trial court erred in granting summary judgment in favor of Steak N Shake and determining that Ramos failed to exhaust his administrative remedies.

*Ramos*, 2023 WL 8791666, at *3.  The *Ramos* court proceeded to certify the conflict between the Second and Fourth DCA.  *Id.* at *3 ("Additionally, we certify conflict with the Fourth District's opinion in *Belony* . . . to the extent that it holds 'when a discrimination charge only and specifically alleges a violation of federal law, the act of dually filing the charge with the [Commission] is insufficient to comply with the requirements of section 760.11, Florida Statutes (2019).'").

Plaintiff also draws the Court's attention to *Almond v. Wells Fargo Bank, N.A.*, No. 23-23671, ECF No. 21, (S.D. Fla. Jan. 24, 2024).  In *Almond*, Judge Moore denied a defendant's motion to dismiss and rejected a nearly identical exhaustion argument in the Title VII context after evaluating a similar EEOC Charge and analyzing the circuit conflict described above.  *See generally id.*  After considering the FCRA's text, purpose, and legislative history, Judge Moore concluded that, although

the statute requires a plaintiff to "identify a violation that he purportedly suffered, the statute does not require that Plaintiff must invoke which statutory scheme under which he plans to proceed." *Id.* at 9. Judge Moore went on to conclude that "[h]ad the Florida legislature intended to require an aggrieved party to allege that his claim arises under the FCRA, it could have easily done so.  It did not.  To hold otherwise would write a requirement into the statute that does not otherwise exist." *Id.*

In reaching this conclusion, Judge Moore explicitly rejected the underlying rationale in *Belony*, concluding instead that 1) a plain reading of section 760.11 does not "remotely suggest[] a requirement that an aggrieved party specify which statutory scheme under which he plans to proceed," and 2) "in any event, the discrimination charge informs the employer of the precise set of facts that could give rise to liability under either statute—the omission of the term 'FCRA' from the Charge should not defeat the otherwise sufficient notice that the employer faces allegations that could give rise to liability under the FCRA." *Id.* at 11–12.  In so holding, Judge Moore implicitly embraced the Fourth DCA's holding in *Ramos* as the better rule and the more accurate prediction of the Florida Supreme Court's view.  This Court agrees.

Defendants' attempt to distinguish this case from *Almond* also fails.  Indeed, there are only two differences the Court can discern between this case and *Almond*—and neither materially alters the Court's determination that Judge Moore's analysis in *Almond* applies with equal force here.

*First*, Defendants argue that "Plaintiff specifically wrote in her Charge that her claim only arises under the ADA; indeed, she has a bolded section titled 'APPLICABLE LAW.'  As the master of her own Charge, represented by counsel, Defendants were only put on notice that Plaintiff intended to file suit under the ADA, with its attendant damage caps, and not under the FCRA (which has no damages caps)."  [ECF No. 39] at 1.  But Plaintiff's addition of the capitalized and bolded words "Applicable Law" in Plaintiff's EEOC Charge—which concededly mentions only the ADA after the words "Applicable Law"—still does not fundamentally alter the Court's conclusion that the EEOC

Charge at issue sufficiently puts Defendants on notice that they faced potential liability under both the FCRA and the ADA.  Not only were the words "FCRA" written on the form in two different places, but a box next to the option indicating Plaintiff's intent to file the Charge with the FCHR had an "X" clearly affixed next to that option on the Charge.  Moreover, the fact that ADA and FCRA claims are evaluated under the same legal framework further assures the Court of the soundness of this conclusion.  *Holly*, 492 F.3d at 1255; *Samson v. Federal Exp. Corp.*, 746 F.3d 1196, 1200 n.2 (11th Cir. 2014) ("disability-discrimination claims under the FCRA are analyzed using the same framework as ADA claims").  Indeed, as Judge Moore observed, "[i]t strains credulity to say that an employer could not reasonably assume that an individual alleging a type of discrimination cognizable under either statute, where such charge was dual filed in a federal and state agency, only planned to proceed under one statute."  *Almond,* No. 23-23671, ECF No. 21, at 12.

*Second*, the fact that this case involves the ADA while *Almond* concerned Title VII is also of no moment.  Both cases address an identical EEOC Charge form and the same Florida statute—the FCRA.  Indeed, as the Court has already noted, the "ADA imports the remedies available under Title VII." *Aponik*, 106 F. Supp. 3d at 623 (citing 42 U.S.C. § 12117(a)).  Thus, Judge Moore's analysis in *Almond* is equally applicable and persuasive in the ADA employment disability discrimination context.  Like Judge Moore, this Court similarly rejects the *Belony* analysis and agrees that *Ramos* is the better rule—and the more likely statement of Florida law were the Florida Supreme Court to rule on this question.

Finally, apart from Judge Moore's clarifying and persuasive reasoning in *Almond*, the Court also notes several additional case-specific considerations that further militate in favor of finding exhaustion here, even if the Florida Supreme Court were to ultimately determine that *Belony* was rightly decided.  First, this Court's independent review of the EEOC Charge at issue in *Belony* revealed that the Charge there did not include the words "FCRA" or "FCHR" anywhere on the face

of the Charge.   To the contrary, the Charge in *Belony* included a general option to file it "with both

the EEOC and the State or local Agency, if any[.]" Further, no mark or indication appeared on the

face of the *Belony* Charge that would have sufficiently put the employer on notice that the *Belony*

plaintiff had intended to make an affirmative selection of that option. Here in contrast, the EEOC

Charge specifically mentions the FCHR in two separate places.  Moreover, there is a clearly marked

"X" in the box next to the FCHR dual-filing option, [ECF No. 19-1] at 2.  Accordingly, Defendants

were adequately put on notice that they faced potential liability under both the FCRA and the ADA.

Defendants' FCRA exhaustion argument thus fails.

### C.  Plaintiff Exhausted Her Administrative Remedies Under the MDHRO

The MDHRO is codified in Chapter 11A of Miami-Dade County Code.  Under section 11A-

26(1)(a), the MDHRO makes it unlawful "for any employer to engage in any practices described

below on account of the . . . disability . . . of any individual or any person associated with such

individual: (a) To fail or refuse to hire or to otherwise discriminate against any individual . . . ."

Miami–Dade County, Fla., Code, ch. 11A, art. IV, § 11A–26(1).   In section 11A-28, titled

"Procedures for employment discrimination complaints," the MDHRO provides that "[a]ny person

aggrieved by an unlawful employment action prohibited by this article must file a written, signed

complaint with the Director within one hundred eighty days (180) after the alleged unlawful practice

occurs." *Id.* § 11A–28(1).

The MDHRO further states that "[t]he complaint shall set forth the facts upon which it is

based with sufficient specificity to identify the respondent.  Such complaint may be amended;

however, the amended complaint must be filed within the period one hundred and eighty (180) days

after the alleged unlawful practice occurs." *Id.* § 11A–28(2).  Finally, section 11A-28(10) provides,

in relevant part, that private persons may enforce violations of the MDHRO in accordance with the

following procedures:

> If within one hundred eighty (180) days after a complaint is filed alleging discrimination, the Director has been unable to obtain voluntary compliance with the provisions of this Article, the aggrieved person may demand a notice of right-to-sue from the Director, the issuance of which shall terminate the jurisdiction of the Director and the Board over such a complaint. Not later than ninety (90) days following receipt of the notice of right-to-sue, the aggrieved person may commence a civil action in a court of competent jurisdiction against the respondent named in the complaint. . . If, in a private enforcement proceeding under this Article, the court finds that a discriminatory practice has occurred or is about to occur it may issue an order prohibiting the practice and providing affirmative relief from the effects of the practice, including temporary or permanent injunctive and other equitable relief, temporary restraining order, actual and punitive damages, reasonable attorney's fees, interest, costs or other appropriate relief.

*Id.* at § 11A-28(10)(a)–(b).  Earlier in the same chapter, section 11A-2(3) defines a "Complaint" as "any written allegation of a discriminatory act or practice prohibited by this chapter."  Miami–Dade County Code, ch. 11A, art. I, § 11A-2(3).

Turning to the parties' positions on this point, Defendants argue that Plaintiff failed to exhaust her administrative remedies under the MDHRO because her EEOC Charge never mentioned the MDHRO and "was never filed with the 'Director' of the [Miami-Dade County Human Rights] Commission as explicitly required by the Code."  MTD at 16–17.  Defendants go on to argue that "[a]s no complaint under the Code was ever filed with the Director of the Miami Dade County Commission for Human Rights (both explicit prerequisites under the Code that Plaintiff is not free to simply write out of the Code as if they never existed), and as the time to do so has long since passed (as noted above, a complaint under the Code must be filed within 180 days of the alleged discrimination), Counts [Three] and [Six] should be dismissed *with prejudice*."  MTD at 17 (emphasis in original).

In her Response, Plaintiff explains that after she dual filed her EEOC Charge, the EEOC notified her that, on March 2, 2022, her "recent correspondence of employment discrimination" had been transferred to the MDCHR for further processing, and on March 24, 2022, the MDCHR provided

Plaintiff with a "Notice of Charge of Discrimination" stating that her Charge had been "filed under Chapter 11A of the Miami-Dade Code and federal law."  Resp. at 13–14.  Plaintiff further responds that 1) this Notice bears the signature of Erin New, Division Director; 2) the MDCHR mediated her claims; and 3) on April 12, 2023, the MDCHR issued a Notice of a Right to Sue Letter authorizing her to enforce her claims as a private person pursuant to section 11A-28(10).  Resp. at 14.  Plaintiff also attaches documentary evidence in support of these claims to her Response. [ECF Nos. 23-2–23-4].  In Reply, Defendants reassert that Plaintiff failed to indicate on her Charge that she wished to bring proceedings under the MDHRO and argue Plaintiff's attachment of correspondence evidencing that she followed applicable procedures under the MDHRO is improper.  Reply at 9–10.

Defendants' argument on this point is again unavailing.  For one, on its face, the Amended Complaint adequately alleges that Plaintiff complied with the administrative prerequisites of the MDHRO before bringing suit—indeed, Plaintiff has alleged that she received a Right to Sue Letter from the MDCHR on April 12, 2023.  Am. Compl. ¶¶ 11–15.  While the documents attached to Plaintiff's Response serve to further substantiate the allegations contained in her Amended Complaint, Plaintiff is not required to substantiate *any* of her allegations with documentary evidence at the dismissal stage of these proceedings.  Moreover, even if Plaintiff were required to substantiate her allegations, the Court has already found it proper to take judicial notice of Plaintiff's Right to Sue Letter from the MDCHR.  [ECF No. 23-4].  And that Right to Sue Letter establishes all the prerequisites for bringing suit under section 11A-28(10), including the proper signature from the Division Director.  *See* [ECF No. 23-4].

Accordingly, Plaintiff has sufficiently alleged that she complied with the MDHRO's administrative prerequisites before bringing this lawsuit. *Cf. Foster v. MD Turbines Logistics, Inc.*, No. 22-22190, 2022 WL 19458221, at *1–2 (S.D. Fla. Oct. 26, 2022) (finding that plaintiff's failure

to allege the demand and receipt of a right to sue letter from the Director of the MDCHR required dismissal).

### III.   The Failure-to-Accommodate Claims

Last, Defendants argue that Plaintiff "never alleges she confirmed to Alto that pairing her hearing aid with Alto's headset was a reasonable accommodation that would allow her to perform the essential functions of her job as a driver." MTD at 18.  Accordingly, Defendants maintain that Counts Four through Six warrant dismissal because the Amended Complaint "falls short of the pleading requirements to state a failure to accommodate claim." *Id.*  But this argument fails.

Under the ADA, an employer may not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training . . . ."  42 U.S.C. § 12112(a); *see also Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).  "[T]he term 'discriminate' includes . . . not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . .  employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business . . . ."  *Holly*, 492 F.3d at 1262 (quoting 42 U.S.C. § 12112(b)(5)(A)).  "Thus, an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship."  *Id*. (emphasis in original).

"[T]he EEOC's interpretive guidelines, issued pursuant to its authority to issue regulations under the ADA, provide that '[i]n general . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.'" *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1364 (11th Cir. 1999) (quoting 29 C.F.R. pt. 1630 App. § 1630.9).  "Once a qualified individual with a disability has requested provision of reasonable accommodation, the

employer must make a reasonable effort to determine the appropriate accommodation." *Id.* (quoting 29 C.F.R. pt. 1630 App. § 1630.9).  "[T]he burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1286 (11th Cir.1997); *Willis v. Conopco, Inc.*, 108 F.3d 282, 284–86 (11th Cir. 1997)). "Only after the employee has satisfied this burden and the employer fails to provide that accommodation can the employee prevail on a claim that her employer has discriminated against her." *Gaston*, 167 F.3d at 1364.  Where an employee has failed to request a reasonable accommodation, the failure to do so is "fatal to the prima facie case."  *See Warren v. Volusia Cnty., Fla.*, 188 F. App'x 859, 863 (11th Cir. 2006). And "[w]hether an accommodation is reasonable depends on specific circumstances." *Terrell*, 132 F.3d at 624 (citing *Wernick v. Federal Reserve Bank,* 91 F.3d 379, 385 (2d Cir. 1996)).

Here, Plaintiff's allegations squarely rebut Defendants' contention that the Amended Complaint fails to adequately plead an actionable failure to accommodate.  Specifically, Plaintiff alleges that during her ride along, "Oveisi noticed Ms. Jackson was unable to put the company's in-the-ear headset (similar to wired headphones) in her left ear because she was wearing a hearing aid." Am. Compl. ¶ 26.  Plaintiff then alleges that Mr. Oveisi informed Ms. Jackson that "Alto would not be able to keep her on as a driver if she could not wear the Alto headset." Am. Compl. ¶ 28.  Next, Plaintiff alleges that she "explained to Mr. Oveisi that her hearing aids are Bluetooth capable and, as in her prior jobs as a passenger transportation driver, she could simply pair her hearing aids with the company phone."  Am. Compl. ¶ 29.  Finally, Plaintiff alleges that after her ride along, "Mr. Oveisi separated Ms. Jackson from the other driver and told her that she could not drive for Alto because she could not wear the company's in-the-ear headset . . . Although Ms. Jackson placed Alto on notice of

her need for a reasonable accommodation, Mr. Oveisi/Alto failed to engage in any interactive process to determine whether Defendants could accommodate Ms. Jackson's hearing disability and need to wear a hearing aid."  Am. Compl. ¶¶ 35–36.

To the extent Defendants maintain that Plaintiff's failure to *personally* request a "reasonable accommodation" is fatal to her claim, *see* MTD at 18, they are mistaken.  Plaintiff is not required to use the magic words "reasonable accommodation"—a legal term of art.  Instead, Plaintiff need only demonstrate there were reasonable accommodations available and that she in fact requested one.  And that is exactly what she alleges to have done when she requested to pair her hearing aid to the Alto Headset via Bluetooth.  "Once a qualified individual with a disability has requested provision of reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation."  *Gardens & Home, Inc.*, 167 F.3d at 1364 (quoting 29 C.F.R. pt. 1630 App. § 1630.9).  Here, it appears from the allegations in the Amended Complaint that Defendants failed to undertake this reasonable effort.  Thus, Defendants' argument for dismissing Plaintiff's failure-to-accommodate claims must fail.

**CONCLUSION**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Amended Complaint and to Strike Claim for Damages Relating to Post-Termination Stroke, [ECF No. 19], is **DENIED**.  Defendants shall file their Answer to Plaintiff's Amended Complaint within the time-period allowed under Fed. R. Civ. P. 12(a)(4).

**DONE AND ORDERED** in Miami, Florida, this 12th day of February, 2024.

_____
**RODOLFO A. RUIZ II
UNITED STATES DISTRICT JUDGE**